Number 07-2643. Mr. Siegel and Mr. Henson. A lot of people left when you got up. Maybe it's, I don't know, bad cologne or something? You don't have to take that from me. I'm just kidding. May it please the Court. My name is Dan Siegel, and with Edson Bostick, we represent the appellant Tony Soto. With the permission of the Court, I request three minutes for rebuttal, granted. There are three reasons why the government failed to meet its burden of proving the knowledge element of aiding and abetting. First, the government didn't prove knowledge of the specific crime charged in the indictment. What did the government prove? First of all, what did the government need to prove? What the government needed to prove was that Tony Soto had knowledge of the specific false statement that Teresa Brown was making on the firearms purchase. When she made the purchase, where was he? He was right there in the store with her. He wasn't right next to her. He wasn't looking at the form. He wasn't even out in the car. He was actually in the gun store. He was in the store with her, and you have a tape of that showing it. So it shows his presence in the gun store, looking at guns, being fairly close by during the course of the gun sale. We agree with you that there's going to be a circuit split, is there not, on this issue? Well, there would be a circuit split on the required by this chapter element. There wouldn't necessarily be a circuit split on the knowledge element. The requirement of knowledge is standard across the nation. But here the offense is what? Making a false statement, right? The offense is making a false statement. And that he was an aider and abetter. Correct. Under 18 U.S.C. Section 2. Isn't it a very reasonable inference that your client knew that Brown was going to make a false statement? Well, there we have to get into what the standard is. And the standard is recognized in Cartwright is that there has to be a logical and convincing connection between the evidence at trial and the inference of culpable knowledge. You're losing me. Well, let me give you an example. What was the false statement that Brown made? The false statement was certifying that she met the definition of an actual buyer, which was specifically defined on the form to exclude purchasers for third persons.  I'm not buying this gun on behalf of a third person. And did the government put in evidence at trial that she was actually buying the gun for Soto, not herself? That is correct. But she read the form, so she knew the definition. So she knew that when she was making that statement, she was making a false statement. Tony Soto didn't know the definition. At least they never proved that he had notice of the definition. Yeah, but Cartwright is not appropriate. It's a readily distinguishable part of the requirement in the Cartwright case was that the government proved materiality of the statement. We don't have that in this case. There's nothing requiring materiality. Well, no, no, no. Cartwright was aiding and abetting a drug distribution case. Yeah. So it wasn't a false statement. Oh, I'm begging for it. But Cartwright required that he know that there was drugs that were involved. Right. It wasn't enough to know that you were doing something illegal. You had to know the specific crime, drugs. Yeah. In this case, he knew that she had to sign something. Correct. And why isn't it a logical conclusion that he knew she was there to buy a firearm for someone other than herself, therefore she's going to have to sign something, which is not true? Well, because the ATF investigator, Weaver, testified at trial that there are two questions on the form, one about the transferee, who's also called the buyer, and she identified herself as the buyer and transferee of the form. And, in fact, she was the buyer and transferee. He testified that the purchaser, the customer, is the buyer and transferee. So he wasn't charged with making a false statement in regard to number one, neither he nor she. The only charge of a false statement was the actual buyer false statement. Now, you wouldn't know that the answer to any question on the form would be false unless you know that there's a requirement that you make the certification under that definition that you're saying, I'm not purchasing the firearm for a third person. So unless you have that knowledge of the definition, you might know she's making a statement that she's putting her name down as a customer, but you wouldn't know that she's making a statement that's false. Soto's got to know that if she goes in and she makes, if she makes a false statement, it ain't good, right? True. And how could he possibly have thought anything other than she was going to make a false statement if she said that she was buying the gun for herself and, in fact, she was buying it for him? Well, that, you're putting the bunny in the hat. You're assuming that he knew that she said she was buying the gun for herself. But the government put evidence on at trial that he did know, and it sounds like the jury believed it. No, no, no. He knew that she would put her name down as the purchaser of the firearm. What did he think standing there that she was doing? He thought that she was doing a straw purchase of a firearm. He sent her in to buy the gun for him so that he could resell it to a drug dealer. I'm not saying that he didn't know he was involved in an illegal enterprise. What I'm saying is they didn't prove knowledge of the specific certain crime here that he made, a false statement about her status as an actual buyer. Because unless you know that the question is there, unless you know that you have to make that certification, you don't know that her statement is false. You rely on a case that says that it's not a violation of ADA embedding 924, merely because you have expressly directing the purchaser to provide the false statement. Is there any case supporting your view that you actually have to have someone directing them to make a false statement on 924? I'm not suggesting that that's such a requirement. You explicitly direct a person to make a false statement. What I'm arguing is that you have to have a basis to infer the ADA's and embedder's knowledge that the statement the person is going to make is false. He knew she was going to put her name down as the purchaser of the firearm, but in a sense she was the purchaser of the firearm. She paid for the firearm, and the ATF expert said the customer is the buyer and the transferee of the gun. So that wasn't a false statement. At least they didn't charge him with that as a false statement. So our argument is that if you're going to charge somebody with aiding and abetting a false statement on the form regarding her status as an actual buyer, he has to know that she's making a statement that's false. And unless you know the definition, you don't know it's false. Can we accept your position that she's the buyer of the firearm when the proofs are she's a straw buyer. She's not the real buyer. The person that it's being bought for is someone else. So that if we – I'm not going to say we do or do not, but if we decide to reject your position that she is the buyer, your argument then collapses, does it not? Well, no, not necessarily because the government still has the burden of proving knowledge of the specific crime charged in the indictment. If you look at the indictment, they don't allege a false statement regarding her status as the buyer. They allege a false statement regarding her status as the actual buyer, a person who is defined to exclude third person. So unless you have actual knowledge of that, then you don't support the inference of Ader and about her knowledge. Look, Teresa Brown knew the definition. So it is fair to infer that she knew that what she was saying was false. But it is neither logical nor convincing to suggest that Mr. Soto would have the same knowledge of falsity if he didn't know the definition. The bottom line here – Isn't what you're really making is a sufficiency of the evidence argument? That's clearly what we're making, a sufficiency of the evidence argument on knowledge. As I said in the last case, there aren't too many cases you find that on appeal you win on a sufficiency of the evidence argument. Well, let's look at Cartwright then, which is the fundamental case we support. In Cartwright, the defendant was the lookout for a guy who turned out to be a drug dealer. And the court found that there was plenty of evidence to show that he knew he was involved in a dirty illegal deal. And he knew that the guy in the car was selling contraband. But there wasn't enough evidence to support the inference that he knew that it was a controlled substance. And because you had to prove Ader and a better knowledge of the specific certain crime involved, the evidence wasn't sufficient. But here Soto gets Brown to go in to buy as a straw person a gun to be given to Soto so Soto can use it for another activity. And Soto is a felon, right? No. He's not a felon. There's no evidence that Soto was a felon. Okay. So if he knows that, isn't that very different from not knowing that the contraband was a particular drug in Cartwright? No, I think there is an analogy because what the premise of the case of Cartwright is that you have to know the specific crime. Okay. So if he didn't know that she was making a false statement regarding her status as an actual buyer, he didn't have the knowledge of falsity necessary to support the conviction. Could Soto have gone in and bought the gun? Actually, there's no evidence in the record to suggest that he couldn't have because there's no evidence in the record that he was a prohibited person. Look, if Tony Soto had previously purchased a firearm, there would be plenty of evidence to support the inference that he knew she was making. Why didn't Soto buy the gun, by the way? There's no evidence of that in trial. I think it's fair to infer that he was in on a scheme to sell guns to drug dealers and that he didn't want his name involved in it. So he used his girlfriend to purchase the firearms so the guns would be in her name so he could resell them. You know, the difference in Cartwright in this case is that your client knew that she was going to go in there and buy a gun, which was going to be transferred to him and then ultimately to a drug organization or whatever. In Cartwright, the defendant knew he was involved in some nefarious activity. He just didn't know what it was. He just didn't know what it was. And they charged him with a specific crime of adiabating the distribution of drugs or whatever. And they have proof he knew he was involved in any type of drug nonsense. Your client knows he's involved in the transfer of a firearm from other than the purchaser who is the straw purchaser. So Cartwright is interesting, but is it really on point? When your client knows specifically, which Cartwright did not know, that the gun that she was buying was going to be sold eventually not to her, was going to be used eventually not by her but by some third party? Well, I think your question gets down to one of the fundamental concerns about aiding and abetting law, which is actually articulated in Cartwright, that a jury might convict a person because he was involved in dirty dealing or he was doing something that helped someone who was doing something wrong. But that person might not have the specific knowledge of the specific crime. Look, I'm not saying that in every prosecution under the statute that the defendant would necessarily win if he sent his girlfriend in. They have to ask the question to support the inference of knowledge. They never ask the girlfriend, did you ever show the form to Tony Soto? If they had asked that question and gotten a yes answer, the inference would be established. Yeah, but that's not the point. In Cartwright, he didn't know that these people were involved in the distribution of drugs. He had no idea, as far as the evidence is concerned. In this case, your client knew that they were aiding and abetting the distribution or the straw sale of a firearm. Yes, but did he have knowledge of falsity of statements on the firearms form? That's the crime. But the point is that he knew she was going to go in there and buy the gun, and she was not really the buyer of the gun. It was being bought for a third party. Your question is not aiding and abetting. They're aiding and abetting something, but at least is there circumstantial evidence to help prove this? He's in with her. He's next to her. This is all occurring. It's all a setup. If they had asked the firearm store salesman, did you ever explain the actual buyer question on any of these four occasions to the young lady, that would have been sufficient to support the inference, because the tape shows Tony Soto hovering around, and you can infer he would be nearby and he would be something that he would want to listen to. But they never asked the salesman the question. They never asked the girlfriend the question. They never asked the question, Mr. Soto, did you ever, did Mr. Soto ever buy a gun before? If he had, if he had seen the form, then that would be sufficient to meet the government's burden of proof. I notice that time is running out, and there is an additional argument that I'd like to briefly summarize. Actually, we'll get you back on that on rebuttal, because I'm going to ask the government some questions on that, and you'll be able to pick up on that. Yes, Your Honor. And required by this chapter portion. Correct. We'll get you back on that. May it please the Court. I'm Eric Henson. I represent the United States. I'll address Judge Ambrose, the question that you asked. In other words, required by this chapter portion, it looks to me, one could argue, I don't know if it necessarily looks, but you could argue it's an element of the crime. In other words, you have to show that the person from whom you purchased and made the false statement is required to keep records. Yes. Was that done? That was done in two ways. Not by the jury. Was it? It was done by the judge, but not by the jury. The judge gave the jury an instruction with respect to that, but the jury was instructed that that was one of the elements that they had to find. So the jury never found.  Correct, Your Honor. Well, your adversary says that's a question for the jury and that he's been convicted under a crime, one of the elements of which the jury never found. In other words, is required by this chapter an element? It is an element. And if it is an element, doesn't there have to be a jury instruction that you have to find jurors that this element was met? The proof of this element being met by the government was beyond a reasonable doubt. Which was. Here the court instructed the jury that that was one of the elements that they had to find. The court went on. What was the instruction on this point, the actual instruction? The instruction on this point is set out in the government's brief. Yeah, the judge charged the jury that that is a matter of law, that the gun dealer was required to keep these records as a matter of law to that effect. In other words, it wasn't an issue of fact that the jury had to decide. But that flies, does it not, your adversary says, in the face of classic criminal law that you've got to be convicted by a jury of every element of the crime. Even though evidence to the contrary might be overwhelming. So how can this verdict stand when no jury ever found that the gun dealer was required by law to keep these records? A judge decided, but not a jury. Well, the judge instructed the jury with respect to that. The jury never found it. They found it under direction. Under direction. But don't they have to, doesn't an element have to be found by the jury? The, and I would submit to the court that the element was found under the judge's instructions. But that's, if I elect to be tried by a jury, I do not elect to be tried by the judge. The failure of proof that is alleged here with respect to that element is a mistake of law, according to Mr. Soto. And where else do we look with respect to is it required by law to be kept than in the law? And the judge is the official who answers that question. The judge can answer jurisdictional elements, I suppose. But this is not jurisdictional, is it? It is not jurisdictional. It's an element of the crime. It is an element of the crime which the government proved and which the judge told the jury the government had to prove. Well, aren't you arguing the case then for the appellant? That's what the appellant's argument is. It's an element of the crime. The jury never found it. The judge found it. But he's, as Judge Ambrose said, he elected to be tried by a jury, not by a judge. The, what the defense, as I understand the defense argument, as it is articulated by the defense, is that there was a failure of proof by the government. The defense agrees, as I recall it, that the instruction was correct if the judge had correctly interpreted the law. No, I think you misinterpreted. Let him speak for himself. I think the appellant's position is that an element of the crime is that this was required to be kept by law. Being an element of the crime, a jury must be satisfied by it unanimously beyond a reasonable doubt, and the judge was satisfied with it, but the jury was never satisfied. Or is your position this is a purely legal issue and the jury? Yes, Your Honor. That's got to be your out. With respect to, if I may give the analogy that happens in courtrooms every day, these cases are tried less often, an element of distribution of a controlled substance is that it is a controlled substance. The government proves that the substance was, for example, heroin, and then the model instructions of the Third Circuit have the judge instruct as a matter of law, if you find the government has proved that this was heroin, then it is a controlled substance. Well, you're playing judicial dodgeball here. Your position a second ago was that this was not required to be proven. Your position now, pure and simple, is that this is not an element of the crime. This is a judicial, a legal issue which is not an element of the crime that the judge, as a jurisdictional matter, must determine. I would say the element of the crime is that the false statement be on Form 4473. The question whether Form 4473 is required by law to be kept is a legal question, and the judge answered that question correctly. Well, let me, if you want to switch gears here, you have an Achilles heel here. He was convicted of aiding and abetting the false statement in this form, correct? Yes. No one ever proved he even saw the form, let alone knew it was going to be executed. The government proved that the defendant was involved in a straw purchase, but they never proved that he knew, saw, or told her to answer this form incorrectly. They should have indicted him for making a straw, to facilitate a straw purchase, aiding and abetting that, but they didn't indict him for that. They indicted him for aiding and abetting the signing of a false statement, and there's no proof in this record that he had anything to do with her signing this false statement. They proved he paid her to come in. They proved that he paid her to transfer the gun, but they never proved that he had anything to do with this statement, let alone saw it. He directed her to buy it. Am I correct or not? I respectfully would beg to dither, Your Honor. Well, strike me out. At page 30 of Mr. Siegel's brief, he gives the inferences that he agrees can be drawn from the record, which are that he knew that some paperwork would be generated during the firearms purchase, the purchaser would be directed to provide her name on the paperwork, and that Theresa Brown would identify herself in the paperwork as the purchaser of the firearms. Wait, whose testimony is this? This is the summary of the inferences that Mr. Siegel agrees can be drawn from the record. I'm not talking about inferences. I'm talking about what facts in this record reflect that the defendant knew that she was signing a false statement. That's what he was indicted for. You're telling me the facts in this record, which reflect that he knew it was an intentional crime, that she was going to sign a false statement contrary to 924. Well, if I may beg, contrary to 924, he doesn't have to know the statute that's going to be violated. He has to know that she's going to provide a false statement. Correct. The evidence is that the crime was committed to supply firearms for drug dealers. Soto did not recognize that the firearm would be in a person's name when it was purchased. That is that the person who bought the gun would have to state that he or she was the purchaser of the firearm, which Soto knew was false because he was paying her to purchase it. What evidence is there that he knew she was going to sign this statement? What evidence? Give me the facts in this record, which reflects that he knew she was going to sign a false statement. He knew that she was going to sign a statement. He was present when she filled out all the paperwork, so he was aware. There's nothing in the record to reflect that he saw her fill out this false statement and knew it was going to be filled out falsely. The testimony of Mr. Delia, the drug dealer, was that the defendant, Soto and Smith, actively participated in the transactions. Correct. What evidence is there that he knew or told her or was involved in her signing this false statement? That's what he was indicted for. He directed her to buy the gun. Correct. Knowing that, if he didn't know it before the first purchase, when he was present when she filled out the paperwork, that she would have to say that she was the purchaser. What evidence is there that he knew she had to fill out a false statement to buy the gun? Why don't you see it in this record? He knew that she would have to fill out a statement or identify herself in some way, whether it was on a piece of paper, how. But you and I are talking, but we're not communicating. I'm asking you for the facts which show that he knew she was going to sign a false statement. That's what he was indicted for. The facts are that he knew that the firearms that he was trading to drug dealers would be in a person's name, the name of the purchaser, so that he knew that the person who purchased them would identify themselves as the purchaser. That is, make a statement. He directed her to identify herself falsely as the purchaser so that the guns would be in her name. He directed her to create a false record. There's no evidence that he knew exactly what the record was. Well, that's the problem. There's no evidence that he knew she was going to go in there and buy a gun and it wasn't for her. But there's no evidence that he knew she was going to sign this statement required by 924. I think that the analogy to Cartwright is this. And while we don't have to prove the specific line on the statement, that is, he knew that was false explicitly. In Cartwright, there was no proof that he knew the nature of the criminal activity that he was aiding and abetting. In order to prove aiding and abetting with respect to controlled substances transaction, the government must prove that the defendant who's aiding and abetting realized that they were drug transactions. But it's not a defense to say they were dealing in crack cocaine, but I thought it was heroin. Counsel, let me ask you a question. Aside from a false statement, is there any evidence in the record that Soto knew that any form at all would have to be filled out? Yes, in two ways. He knew that a record would be made because he used her in order to create a false record. Well, what if she, I mean, we're talking about a piece of paper, right, that is false or not false or whatever. I mean, is there any knowledge that he knew that a piece of paper was going to be generated as opposed to a cash transaction, show you an ID, here's some cash, thank you. He was present during each of these transactions. He was characterized by the seller as having actively participated. When you say present, he was in the store, but he was not present actually at the time. He did not witness her signing any statement. There's no evidence of that. There's a videotape, and I believe that he is right there, my recollection of the videotape is correct, while she's filling out the paperwork. In the store. In the store, and he's receiving payment from Smith, what appears to be, and the record has to be looked at in the light most favorable to the government, while that's happening. So that it seems to me that the record that he was actively participating in these transactions, present in the store, which is a small area where these transactions occur, the last of these transactions, which was characterized by the seller as being similar in all relevant respects to the previous transaction, shows that he could not but have been aware that she was having to fill out forms in order to make the purchase. I didn't know what she was putting on. She might have been buying this for the, not for myself, for someone,  but he knew that if she was doing what he desired her to do, she was not putting him on, although he was the buyer. And she said that he was the buyer, and that was her understanding of the transactions. I see. So it seems to me that the combination of his presence during all the transactions, the reason why he had the transactions done by her, and her testimony that he directed me to purchase these things for him, I was not the purchaser, establishes that he was aware that she was falsifying those documents, even though he might not have known the particular lie that she told in order to accomplish his aim. Thank you very much. Thank you. Mr. Siegel. And if you'll pick up where we started with Mr. Henson, the required by this chapter, it would seem in the end his argument was that juries decide facts, judges decide law, and even if an element contains an aspect of law, that legal aspect can be determined by the court. And if I were just to add one thing to it, the Supreme Court has said in the County Court of Ulster v. Allen that they quoted from a previous case called Galden, G-A-U-D-I-N, that it's often necessary for the trier of fact to determine the existence of an element of a crime. That is the ultimate or elemental fact from the existence of one or more evidentiary or basic facts. And when they quoted that from Galden, it looks what they're doing is they're implying, one could make a pretty good argument, that you exclude questions of law from the definition of element. Well, let's assume for the sake of argument that Mr. Henson is right on this point, and that while it's in a sense an element of the offense, that it's an element entrusted to the judge to determine whether or not it's required by the statute. It has to be some mechanism for reviewing it, and that mechanism is today. So let's look at whether they met their burden of proving that this actual buyer question was required by the text of the firearms statute. Now, if you look at the firearms statute. Could the judge say as a matter of law, those who operate these types of stores are required to keep records? Yes. But here's what the statute says. Information required by this chapter. To be kept in the records of a person. Correct. Now, the name of the firearms purchaser is information required by this chapter.  But a certification that I'm not buying the gun for a third person, there's nothing in the statute that requires it. Well, we go to the implementing regulations to get to that. Excuse me? We go to the implementing regulations, the CFR, to get to that. True. And if you look at the implementing regulation, you'll see that they require name and address and age and other information about identity. Well, it does reference the form, though. But they don't reference the actual buyer question. They don't say he has to make the certification that he's not buying the firearm for the third person. So the government's argument is essentially this. Maybe the statute doesn't say you have to make a representation about the actual buyer. And maybe if you look at the regulation, it doesn't specifically say you have to make a representation that you're not selling it to third persons. But when you make that representation about who you are and where you live, you have to put it on a form. They have to keep that form in their records. And so the entire universe of questions that they could ask on that form is, therefore, information required by the chapter. Well, that essentially drives a truck through the statutory requirement that in these false statements prosecutions, the prosecutions are only going to be for information that we, the Congress, require by this chapter. So I would submit to you that if the statutory text means what it says, if there has to be a showing that the actual buyer question and representation was required by this chapter, then the government hadn't met its burden of proving. But isn't that a question of law? That's the point. If we determine it is a question of law, isn't the government home free on this particular aspect of the element of a crime? No. No, Your Honor, because the materiality cases, Gordon, for example, deals with precisely that. It used to be that materiality was entrusted to the judge rather than the jury. It was a matter of law. So what was the mechanism for determining whether the judge made a correct determination on that legal concept, materiality? And the answer was motion for judgment of acquittal. Hold on for a second. If you say to convict you of this crime, we must prove 1, 2, 3, 4, and 5. If one of those elements is, in effect, that as a matter of law, one is required to keep records, why can't the judge make that determination and basically tell the jury that I have determined as a matter of law that that has been found in this case or that exists in this case, not found? Well, first of all, we don't concede the point that it's not an element of the offense. But if it's not a factual element, if it's something that's entrusted to the judge. Assuming it is an element of the offense. Assuming that that's correct. Isn't Galden basically implying that you exclude from the questions of fact to a jury what are the questions of law? But even if the question of law is entrusted to the judicial branch rather than to the juries, there has to be some mechanism for reviewing the district court's purported ruling on the legal question. Correct. And if you brought that up, it would be a plenary. It would be de novo review by us as a matter of law. Just as de novo review is of the sufficiency of the evidence. The court, it's a severe burden to show you give all of the credibility determinations to the government. But you're conducting your own de novo review of the record. And so you conducted de novo review of this legal issue as well. Was the determination made by the court incorrect as a matter of law on this issue? When the judge ruled in our post-trial motions that the actual buyer question was required by this chapter, I submit that he made an error of law because there's nothing in the chapter, in the statute that requires the actual buyer definition, that requires the certification that I'm not buying it for a third person. This goes back to a question that Judge Cowen raised about why didn't you prosecute him for straw purchasing instead of aiding and abetting a false statement? The problem is there is no straw purchaser statute. Congress never articulated the standards for who may buy a firearm on behalf of another person. Congress never said, well, it's okay to buy it for your son but not for a friend. It's okay to buy it to pay back a moral obligation but not to pay back a debt or to pay back money. And so the ATF has been required to fall back on this false statement statute. And they've chosen for some reason to charge it under 924 rather than 922. 922 doesn't require that the information be required by this chapter. But they chose to prosecute under 924. And having made that choice, there has to be a showing either to a jury or to a judge that this certification, that I'm not selling it to a third person, is information required by this chapter. And even if the form is required by this chapter, the information about his status as a purchaser for a third person, that isn't required by the statute. Thank you. Thank you very much. Thank you to both counsel for well-presented arguments. We'll take the matter under advisement.